## GRAND LODGE, COLORED KNIGHTS OF PYTHIAS OF TEXAS v. MOORE.
### (No. 3730.)

Court of Civil Appeals of Texas. Texarkana. Aug. 7, 1929.

Rehearing Denied Oct. 3, 1929.

Bell & Clark, of Dallas, for appellant. Lane & Lane, of Marshall, for appellee.

HODGES, J. The appellee in this case is the surviving widow of Melvin Moore, who died on or about February 20, 1928. The appellant is a fraternal organization, of which Moore had been a member. Some years prior to his death a policy of insurance had been issued to Moore by the appellant, providing for the payment of $300 to his wife in the event of his death while a member of the association in good standing, and $75 as a burial and funeral expense fund. After the death of Moore payment of the policy was demanded and refused, and this suit followed. The defense relied on is that Moore was not in good financial standing at the time he died.

In a trial before the court without a jury a judgment was rendered against the appellant for the full amount sued for. The trial judge filed findings of fact and conclusions of law. In this appeal there is no dispute about the sufficiency of the evidence to support those findings.

The constitution and by-laws required that all dues and assessments should be paid by members quarterly and on or before the 10th day of the first month each quarter. The assessments due for the quarter during which Moore died were due on or before the 10th day of January. These were not paid until

the latter part of January and about 10 days before his death. At the time of his death he owed the lodge nothing. The by-laws relating to payment of dues and assessments are as follows:

Section 8 of article 16: "The payment of Grand Lodge tax, endowment and premiums shall be paid by each and every member of the order on or before the 10th day of the first month of each quarter; and each and every member failing and refusing to pay said tax, endowment, assignment and premiums at the time herein provided shall ipso facto stand suspended from all benefits of the endowment department and all other departments of the order during that quarter, and no liability incurred during that quarter by reason of the death of the member shall be a liability against the endowment department or any other department of the Grand Lodge; subsequent payment during that quarter shall not operate as a waiver of said suspension, and no affirmative action on the part of the Grand Lodge or local lodge shall be necessary to effect said suspension from benefits."

Section 1 of article 26: "Any member who has been suspended may be reinstated by paying into his lodge the full amount of premiums, dues and assessments owing to his lodge at the time of his suspension, plus the amount of premiums, dues and assessments that have accumulated during the period of suspension; provided, however, that application for reinstatement is made within six months from the date of suspension. Any member who does not make application within six months after suspension for reinstatement may be reinstated upon furnishing a satisfactory medical examination approved by the Grand Medical Registrar and upon paying into his lodge the full amount of all dues, premiums and assessments owing to his lodge at the time of suspension plus the amount of dues, premiums and assessments that have accumulated since his suspension, or he may be admitted as a new member subject to all conditions affecting new members excepting initiation."

As previously stated, Moore did not pay his dues for the quarter beginning January 1, 1928, within the time prescribed by the regulations above quoted, but did pay them before he died. The question is: Did that delayed payment place Moore in good financial standing before his death? Section 1 of article 16 is the only provision of the constitution or by-laws relating to reinstatement of suspended members. It provides that a member may be reinstated at any time within six months after suspension by the mere payment of all the dues and assessments which had accumulated at the time the member applied for reinstatement. That law was literally complied with by Moore. It follows that unless there is some other provision limiting the liability of the grand lodge to reinstated members, it conclusively appears that Moore was in good standing at the time of his death and the appellant was liable on the policy.

Counsel for appellant contend that under the provisions of section 8 of article 16 quoted above the payment of delinquent dues and assessments does not restore the liability of the grand lodge on the policy for the quarter in which payment is made, if the insured dies during that quarter. In other words, it is contended that the payment made by Moore before his death did not restore the liability for his death if death occurred during that quarter. As supporting that contention counsel refer to the following language of section 8: "And no liability incurred during that quarter by reason of the death of a member shall be a liability against the endowment department or any other department of the Grand Lodge; subsequent payment during that quarter shall not operate as a waiver of said suspension." That section, we think, should be construed as dealing with members who are under suspension at the time they die. Unless expressly restricted the logical result of the reinstatement of a suspended member is to restore him to his former standing in the order and to revive all the rights he lost as a result of suspension. In the section dealing with reinstatement of members there does not appear any limitation upon the rights and benefits which a reinstated member may claim. The limitation on the liability of the grand lodge upon the death of a member occurring during the quarter wherein the suspension took place, which is found in section 8, should be construed as referring to members who died while suspended. To give section 8 of article 16 the construction contended for by the appellant would create an ambiguity, if not a clear conflict, in the regulations of the order. It is the rule among the courts, in passing upon contracts of this character, where the meaning is doubtful, to give the insured the benefit of the doubt. The provision "subsequent payment during that quarter shall not operate as a waiver of said suspension" means a payment made during that quarter after the death of the member who had been suspended. After the member had been reinstated by paying all arrearages due the lodge before his death there would be nothing to waive and the provision would be meaningless, unless it be construed as referring to members who are in a state of suspension at the time of death. The words "subsequent payment" should be construed as referring to payments made subsequent to death. Otherwise there would be a clear conflict between the legal effect of reinstatement and that provision of the by-laws.

The judgment is affirmed.